**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

TERRIE VAVREK, ANGELA TOLLEY, LINDA RAGSDALE, ANGELA MINNER, ANN GEIGER, TINA SALINAS, EARLEEN CARTER, POLLY TIBBS, JAQUIE JOHNSTON, GORDON A. ROWE, LAWRENCE PUJOE, DANNY WILDER, CINDY GONZALEZ, JOSEPH MESZAROS, DENNIS WHITAKER, CHERYL HARTMAN, JOSHUA TORRES, DAVID JANSSEN, DAVID JENSEN, GLENDA SCRUGGS, and MELISSA DAILEY,

Plaintiffs,

v. ) Cause No. 3:11-CV-00498-WCL-CAN

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE and AGRICULTURAL IMPLEMENT WORKERS, UAW; and UAW LOCAL #5,

Defendants.

**OPINION AND ORDER**

Plaintiffs, twenty-one members of the Defendant Unions, believe they received the short end of the stick after the Union and their employer negotiated a six year contract which cut their pay and benefits while increasing pay and benefits for twenty-eight other member/employees. They filed this suit asserting that the Union breached its duty of fair representation to them.

Presently, before the Court is Defendants International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW, and its Local Union No. 5's ("Union Defendants'") Motion for Summary Judgment filed on February 1, 2013. Plaintiffs responded on May 28, 2013 to which the Union Defendants replied on June 13, 2013. For the

following reasons, the Motion will be GRANTED.

## APPLICABLE STANDARD

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson,* 477 U.S. at 255 (quoting Fed R. Civ. P. 56(e)).

## FACTUAL BACKGROUND

The Plaintiffs, 21 of them total[1], are employees of AM General Corporation's ("AM General") Commercial Assembly Plant in Mishawaka, Indiana. This plant manufactures non-military, commercial Hummer II vehicles for General Motors ("the H2 Plant"). The Union Defendants represent a bargaining unit of production and maintenance employees at the Commercial Assembly Plant, which includes the Plaintiffs who are members of that bargaining unit. AM

[1] It appears that there were 30 employees/union members who were affected negatively by the Union actions in this case. Only 21 of them are part of this lawsuit.

General has a separate production facility that manufactures Humvee military vehicles ("the H1 Plant") whose employees are also represented by the Union Defendants through a separate bargaining unit and subject to a separate collective bargaining agreement. Pursuant to the collective bargaining agreements effective at each facility, the plants maintained separate seniority lists, although employees at each plant had limited rights under the governing agreements to move between plants.

In 2008, AM General laid off the majority of its existing H2 Plant workforce due to a lack of production orders for the commercial Hummer. The H1 Plant continued to operate without layoffs and, certain H2 Plant employees that met seniority and attendance criteria were transferred to the H1 Plant. A small skeleton crew of workers remained at the H2 Plant to keep the facility operational while AM General sought new contracts to continue operations at the H2 Plant.

In April 2011, the existing H2 collective bargaining agreement expired and the Union Defendants through its local bargaining unit Local #5, and AM General entered into a six year collective bargaining agreement which governed the terms and conditions of employment for the members of the bargaining unit at the H2 Plant. At the time the Union negotiated and ratified this agreement, AM General had obtained a contract to produce MV-1 prototype taxis and was looking to expand that work to include other commercial vehicle contracts. However, as part of its negotiations with the Union Defendants, AM General demanded wage and benefit concessions from the Union asserting that such concessions were critical in retaining the new MV-1 taxi contract as well as necessary to expand its commercial production capacity. The negotiations resulted in a two tier wage and benefit package, which provided reduced benefits for new hires and employees on layoff. A higher wage and benefit package was designated for a group of employees that AM

General selected based on their seniority and skill set. These employees were designated the "MV-1 Pre-Launch Group." Because the Plaintiffs were laid off at the time the Union Defendants negotiated the collective bargaining agreement, they did not vote on the new contract.

Upon the ratification of the new collective bargaining agreement, all the Plaintiffs were eventually recalled to the H2 Plant. Once recalled, all of the Plaintiffs resumed the payment of Union dues and were listed on the roster of Union membership. However, none of the Plaintiffs were designees of the MV-1 Pre-Launch Group and thus, none received the higher wage and benefit package negotiated by the Union Defendants for those employees. Plaintiffs believe that the Union contract which favors some members of the bargaining unit over others violates the Union's duty of fair representation.

Article 33 of the UAW Constitution sets forth a detailed procedure for its members to challenge the actions of local unions and officials as well as actions of the international union. It is undisputed that none of the Plaintiffs utilized this procedure at any time to challenge the actions of the Union Defendants.[2] It is further undisputed that the Plaintiffs, as due paying members, are provided a copy of a UAW newspaper known as Solidarity which publishes regular articles advising members of their appeal rights under the UAW Constitution. None of the Plaintiffs aver that they were unaware of their rights under the UAW Constitution.

---

[2]Given the Plaintiffs' concession that none of them followed this procedure, the details of what the membership must do to contest union action is relegated to a footnote. A member has sixty (60) days to initiate an appeal to the membership once the "appellant becomes aware, or reasonably should have become aware, of the alleged action or decision appealed." (UAW Const. Art. 33 §4(b)). If this challenge is rejected by the Local Union or fails to act, the member has the right to appeal within thirty (30) days to the International Executive Board ("IEB"). Such an appeal may result in a hearing where the member may have counsel present, submit evidence, and provide a brief. If the member is dissatisfied with the decision of the IEB, that decision may be appealed to one of two bodies, the Convention Appeals Committee (CAC) or the Public Review Board (PRB). The CAC consists of elected constitutional convention delegates. The PRB consists of independent individuals with no UAW affiliation.

Seven of the Plaintiffs, however, assert that they made attempts to exhaust their administrative remedies and reasonably believed that they had exhausted those remedies. Plaintiffs Terrie Vavrek ("Vavrek"), Dennis Whitaker ("Whitaker"), Glenda Scruggs ("Scruggs"), Linda Ragsdale ("Ragsdale"), Ann Geiger ("Geiger"), Melissa Dailey ("Dailey"), and Earleen Carter ("Carter") each claim that they spoke with Bruce Sweitzer ("Sweitzer"), Chairman of the Local 5 or Frank Bonk ("Bonk"), Union Steward and inquired about the filing of a grievance. These Plaintiffs aver that Sweitzer informed them that the Union had already filed a grievance relating to the contract and the grievance procedures had been exhausted. (Vavrek Aff. ¶3; Whitaker Aff. ¶2, Geiger Aff. ¶3; Dailey Aff. ¶2; Carter Aff. ¶2). These Plaintiffs further aver that after speaking with Sweitzer, they turned to Bonk and requested that he file a grievance on their behalf. (Vavrek Aff. ¶6; Whitaker Aff. ¶4; Scruggs Aff. ¶3; Ragsdale Aff. ¶2; Dailey Aff. ¶3; Carter Aff. ¶3). At every turn, these plaintiffs assert, in varying verbal formulations, that they were told either that nothing could be done or that a grievance had already been filed.[3]

Defendants filed the present motion for summary judgment asserting that the Plaintiffs' claim that the Unions breached its duty of fair representation is barred because they did not pursue the internal administrative remedies available to them. Plaintiffs, in response, assert that the Court should overlook their failure to utilize the internal administrative remedies provided in the UAW Constitution and not require exhaustion since Union officials represented to them that nothing could be done. Alternatively, they request the Court to stay this case so that they can assert their administrative remedies. It is to these arguments that the Court now turns.

---

[3]It appears to be conceded that the remaining Plaintiffs had no reasonable expectation that a grievance had been filed or that their administrative remedies had been exhausted.

**DISCUSSION**

"When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty ... to represent all members fairly." *Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 44 (1998). This duty exists through the negotiation of a collective-bargaining agreement and during the administration of the agreement, *see, e.g., Thomas v. United Parcel Service, Inc.,* 890 F.2d 909, 917–18 (7th Cir. 1989); *Schultz v. Owens–Ill. Inc.,* 696 F.2d 505, 514 (7th Cir.1982), and the union's obligation throughout is "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct," *Vaca v. Sipes,* 386 U.S. 171, 177 (1967).

A claim that a union has breached its duty to fairly represent one of its members presumes that the union has been given a complete opportunity to pursue that member's grievance. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652-53 (1965). "Generally speaking, a member will not be heard to complain in court that his union breached its duty of fair representation unless he has first presented his grievance to the union and, if rebuffed, exhausted any and all of the internal union appeals available to him- *so long as* such appeals could result either in granting him complete relief or in the reinstatement of his grievance." *Bell v. DaimlerChrysler Corp.* 547 F.3d 796, 807 -808 (7th Cir. 2008) (citing *Clayton v. UAW,* 451 U.S. 679, 692-93 (1981)). In striking a balance between the policy of providing a judicial forum to enforce the duty of fair representation and the competing policy of encouraging nonjudicial resolution of labor disputes, *Clayton* held that "courts have discretion to decide whether to require exhaustion of internal union procedures." *Clayton,* 451 U.S. at 689 (citing *NLRB v. Marine Workers Local 22,* 391 U.S. 418, 426 n. 8 (1968)). This discretionary exhaustion requirement for intra-union disputes fosters " 'private resolution of disputes, responsible

union self-regulation, union assistance in the interpretation of its governing document, [and] robust union processes,' while at the same time giving the district court the flexibility to allow a case to continue despite the plaintiff's failure to exhaust internal remedies." *Fulk v. United Transp. Union,* 108 F.3d 113, 116–17 (7th Cir.1997) (quoting *Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters,* 20 F.3d 720, 732 (7th Cir.1994).

In this case, the Union's constitution provides a thorough process for its membership to appeal decisions of the local unions. The plaintiffs do not dispute this point, nor do they dispute that they did not follow the procedure; but, they argue instead that the Court should excuse their failure to exhaust under *Clayton's* holding that dismissal of a suit for failure to exhaust internal union remedies is committed to the district court's discretion.

Among the (non-exclusive) factors bearing on the court's discretion are: (1) whether the union has manifested such hostility to the plaintiff's grievance as to render exhaustion of his internal appeal rights futile, (2) whether the internal union appeals procedures are inadequate either to reactivate the grievance or to result in complete relief to the plaintiff, and (3) whether demanding exhaustion would cause undue delay in the resolution of the plaintiff's complaint. *Clayton,* 451 U.S. at 689; *see also Hammer v. UAW, Local Union No. 550,* 178 F.3d 856, 858 (7th Cir. 1999); *Fulk*, 108 F.3d at 116. Here, the Plaintiffs appear to rely on the first two factors to support their claim. First, they assert that they were misled by Union representatives into believing that the exhaustion requirement had been met and thus, the Union was hostile to their efforts to utilize the internal procedures to challenge Union action. Specifically, they assert that Union officials told them that a grievance had already been filed and that it was in the appeals process. They further contend that the Union officers told them "nothing more could be done" and the contract "was more binding than

the Constitution." Second, they assert that the internal administrative process could not have afforded them full relief so as to make the internal procedure futile.

Plaintiffs' first argument, that the Union told them that "nothing else could be done," does nothing to advance their cause. "Ignorance of one's internal union remedies does not excuse the failure to pursue such remedies before bringing suit." *Bell*, 547 F.3d at 809 (citing *Hammer*, 178 F.3d at 858-59; *Miller v. General Motors Corp.*, 675 F.2d 146, 149-150 (7th Cir.1982). The Seventh Circuit has repeatedly held that union members have an obligation of diligence in ascertaining what avenues of relief are available to them within the union. *See Hammer*, 178 F.3d at 858-59, *Miller*, 675 F.2d at 149-50, and *Newgent v. Modine Mfg. Co.*, 495 F.2d 919, 927-28 (7th Cir.1974), *overruled on other grounds by Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 690 n. 3 (7th Cir.1982).

In *Newgent* the Court specifically explained that a union member must make himself aware of the remedies that are available to him **even** when he has been told by a union officer that nothing more can be done:

> By becoming a member of the [u]nion, Newgent was contractually obligated to exhaust union remedies before resorting to a court action. Necessarily implied in this obligation is the duty to become aware of the nature and availability of union remedies. Newgent was not justified in remaining in ignorance of the provisions governing his own union or, in fact, of relying on a statement by an officer that there was nothing he could do.

495 F.2d at 927-28 (internal quotation marks, footnote, and citations omitted). *See also, Bell*, 547 F.3d at 809 (plaintiffs' reliance on union official's statement that their grievances were a "dead issue" does not excuse failure to exhaust internal remedies); *Baldini v. Local Union No. 1095, UAW*,

581 F.2d 145, 148 (7th Cir.1978) (futility not shown despite international union official's remark to plaintiff that nothing more could be done for him), *overruled on other grounds by Rupe v. Spector Freight Sys.*, *supra* 679 F.2d at 690 n. 3.

In light of *Newgent's* holding, which places the onus on union members to know and assert their rights, the Plaintiffs here are hard-pressed to argue that the Union should bear the burden of their failure to do more than simply inquire about their rights. In fact, it appears that only some of them went even that far and, while seven of the Plaintiffs asked Union officials about filing a grievance, none of them actually took any steps to file one, nor do they assert that they attempted to file one and the Union refused to process it or mishandled it in any way. As a result, the Plaintiffs have not demonstrated that the Union Defendants exhibited any hostility toward their attempts to utilize the internal union procedures.

Next, Plaintiffs assert that the Union official's comments to them that "nothing could be done" and the contract was "more binding than the Constitution" suggest that utilizing the internal process would have been futile. Again, however, this argument does not advance the Plaintiffs' cause for at least two reasons. First, even if the Plaintiffs here could demonstrate that the Union officials they spoke with were hostile to their rights as members, the hostility of union officials to a member's grievance will demonstrate futility only when that hostility "permeate [s] every step of the internal appeals process...." *Hammer*, 178 F.3d at 859 (citing *Sosbe v. Delco Elec's*, 830 F.2d 83, 86 (7th Cir.1987)). There is simply no evidence that had the Plaintiffs filed individual grievances, every step of the internal appeals process would have been thwarted by union hostility. See *LaPerriere v. International Union*, 348 F.3d 127, 131 (6th Cir. 2003) (stating that to excuse exhaustion requirement hostility must exist at every level of the appeals process and finding that

Plaintiff met hostility requirement when both the local and the international unions indicated it was useless to appeal and refused to process plaintiff's grievance further).

Second, Union members are not excused from exhausting the appeals available to them simply because they cannot obtain all of the relief they seek. *Bell*, 547 F.3d at 809. Plaintiffs rely on the fact that Union officials told them that the contract was "set in stone" and could not be undone. But here, they seek monetary damages for the Union's alleged breach of its duty of fair representation to them. This remedy *could* have been obtained through the internal appeals process. Thus, there is no basis for this Court to excuse the failure of the Plaintiffs to pursue their administrative remedies.

Finally, the Plaintiffs seek a stay of these proceedings so they can pursue the internal procedures and exhaust the administrative requirements in the UAW Constitution. Plaintiffs have previously submitted this request to Magistrate Judge Nuechterlein in the form of a motion to extend the response time to the Union Defendants' Motion for Summary Judgment. The Magistrate Judge denied that motion. [DE 33]. Plaintiffs represent that there are currently grievances pending relating to both this underlying claim and the Union officials misrepresentation to the Plaintiffs set forth in this lawsuit. In addition, Plaintiffs assert that the International Union President "could" waive the time limits for the filing of an appeal so that they can pursue the internal appeals process. Thus, they seek a stay of these proceedings or a dismissal without prejudice.

Plaintiffs cite no binding case authority[4] that holds that Plaintiffs can meet the exhaustion

---

[4]Plaintiffs do cite to a Sixth Circuit case which simply recites the fact that the Plaintiff in that case repeatedly offered to stay the lawsuit if the union would allow him to exhaust his administrative remedies. The case does not provide any legal authority for the proposition that the Court is required to stay a case under the present circumstances.

requirement **after** commencing suit. Rather all the case law indicates that where plaintiffs have failed to exhaust their internal remedies **prior to filling suit**, and that failure is not excused by the Court, their case against the Union for breach of the duty of fair representation cannot proceed. *See Bell,* 547 F.3d at 807-808. For this reason and the reasons explained above, the Union Defendants are entitled to summary judgment.

**CONCLUSION**

Based on the foregoing, the Union Defendants' Motion for Summary Judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants.

Entered: This 13th day of August, 2013

s/ William C. Lee
United States District Court